CASE 23-C-506          KANAWHA          PAGE 1

CHRISTOPHER CARTER          vs. ACADIA HEALTHCARE COMPANY, INC

LINE DATE      ACTION

1 06/12/23  # CASE INFO SHEET; COMPLAINT; ISSUED SUM 4 3 CPYS; F FEE; RCPT
2           601414; $245.00
3 06/13/23  # RE-ISSUED SUM & 1 CPY AS TO JARED MUSE; S/P BY RESTRICTED
4           DELIVERY BY CM; RCPT 601444; $20.00
5 06/14/23  # RE-ISSUED SUM & 1 CPY AS TO ACADIA HEALTHCARE CO.
6 06/21/23  # RE-ISSUED SUM & 1 CPY AS TO MARK MCDANIEL, D.O.
7 06/22/23  # RMR AS TO JARED MUSE SIGNED 6/17/23
8 06/26/23  # LBT FR SS DTD 6/16/23; SUM W/RET (6/16/23 SS) AS TO ACADIA
9           HEALTHCARE CO. INC

**I.  Parties**

| PLAINTIFF: | Christopher Carter |
|---|---|
| DEFENDANTS: | Acadia Healthcare Company, Inc. d/b/a Charleston Comprehensive Treatment Center; Mark Elliott McDaniel, D.O.; and Jared Muse |

FILED 2023 JUN 12 PM 4:41 C... S. GATSON, CLERK KANAWHA COUNTY CIRCUIT COURT

Civil Action No.: 23-C-500 SW
Akers

**II.  Type of Case**

| TORTS | | OTHER CIVIL |
|---|---|---|
| Asbestos | Adoption | Appeal from Magistrate Court |
| Professional Malpractice | Contract | Petition for Modification of Magistrate Sentence |
| **Personal Injury** | Real Property | Miscellaneous Civil |
| Product Liability | Mental Health | Other |
| Other Tort | Appeal of Administrative Agency | |

**III.  Jury Demand**  __X__ Yes  ___ No

Case will be read for trial by (month/year): **MAY 2024**

**IV.  Do you or any of your clients or witnesses in this require special accommodations due to a disability or age?**

___ Yes  _X_ No

| If Yes, please specify: | ___ | Wheelchair accessible hearing room and other facilities |
|---|---|---|
| | ___ | Interpreter or other auxiliary aid for the hearing impaired |
| | ___ | Reader or other auxiliary aid for the visually impaired |
| | ___ | Spokesperson or other auxiliary aid for the speech impaired |
| | ___ | Other: |

| Attorney Name: | David J. Mincer | | _X_ Plaintiff | ___ Defendant |
|---|---|---|---|---|
| Firm: | Bailey & Wyant, PLLC | | ___ Cross-Complainant | |
| Address: | 500 Virginia Street East, Suite 600 Charleston, WV 25301 | | ___ Cross-Defendant | |
| Telephone: | (304) 345-4222 | | | |

Signature: _____  Date: Monday, June 12, 2023

Payment Type K  Receipt # 601414
$200 ✓  $135 ___  Total Collected $ 245.00
Summons Issued # 3  ___ No Summons
X Return to Attorney  $20 CM x ___
___ Mailed CM/RM  $5 CLK x ___
___ Mailed to SOS w/check# ___  $15 MDF x 3
___ Sent to ___  w/check # ___

# IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**CHRISTOPHER CARTER,**

      **Plaintiff,**

**v.**

                            Civil Action No. 23-C-506

                            The Honorable Akers

**ACADIA HEALTHCARE COMPANY,
INC. d/b/a CHARLESTON
COMPREHENSIVE TREATMENT
CENTER, a foreign corporation; MARK
ELLIOT MCDANIEL, D.O.; and JARED
MUSE,**

      **Defendants.**

## COMPLAINT

    **NOW COMES** Plaintiff Christopher Carter, by counsel, David J. Mincer and the law firm of Bailey & Wyant, PLLC, and for his Complaint against Defendants avers the following:

### Parties

    1.    Plaintiff Christopher Carter is and was at all times relevant hereto a resident of Charleston, Kanawha County, West Virginia and is a male born on August 15, 1962.

    2.    Defendant Acadia Healthcare Company, Inc.(hereinafter "Acadia"), is a business incorporated in the State of Delaware, having its principal place of business at 6100 Tower Circle, Suite 1000, Franklin, Tennessee, 37067, authorized and licensed to do business in the State of West Virginia and is and was at all relevant times doing business as Charleston Comprehensive Treatment Center (hereinafter "CCTC") located at 2157 Greenbrier Street in Charleston, Kanawha County, West Virginia, 25311.

3. Defendant Acadia employed more than 12 persons in the State of West Virginia and, thus, meets the definition of an "employer" under the West Virginia Human Rights Act.

4. Mark Elliot McDaniel, D.O., was at all times relevant hereto employed by Acadia as the Medical Director of CCTC and is and was at all relevant times a resident of Charleston, Kanawha County, West Virginia.

5. Jared Muse was at certain relevant times as alleged herein the acting Clinical Director of CCTC and a resident of Charleston, Kanawha County, West Virginia.

## Jurisdiction and Venue

6. The Court has jurisdiction over this matter, as the Plaintiff is a resident of West Virginia, Defendant Acadia is authorized to do business and is doing business in Charleston, West Virginia, and the actions giving rise to this employment-related claim all occurred in Charleston, Kanawha County, West Virginia.

7. Pursuant to West Virginia Code 56-1-1, Kanawha County is an appropriate venue for this action as it is where the causes of action asserted herein arose, where Defendant McDaniel resides, and where Acadia Healthcare Company, Inc. is authorized to do business and is doing business.

## Facts

8. Plaintiff became employed by Defendant Acadia as a Physician's Assistant at CCTC on or about September 28, 2020, pursuant to a written contract of employment.

9. That written contract expressly stated that Plaintiff was to be paid a salary of $104,000 per year ($2,000 per week) for a term of twelve (12) months and would be automatically renewed unless and until one party or the other took action to terminate it upon proper written notice. It further provides in Section 2.2(a) that Defendant Acadia could terminate Plaintiff's

2

employment without cause or reason upon 30 days written notice, but that Plaintiff would be entitled to 30 days pay throughout that notice period. The written contract does not permit Defendant to suspend Plaintiff with or without pay and does not detail any grounds for a suspension.

10. Defendant Mark McDaniel, D.O. was employed by Defendant Acadia as the Medical Director of CCTC throughout Plaintiff's employment with Defendant Acadia and was at all times a supervisor over Plaintiff throughout his employment there.

11. From the start of Plaintiff's employment by Defendant Acadia at CCTC until late April 2021, James Patton was employed by Defendant Acadia as CCTC's Clinical Director and was also a supervisor of Plaintiff.

12. After James Patton was separated from employment in late April 2021, Defendant Jared Muse was employed by Defendant Acadia as the acting Clinical Director of CCTC and from that time to the end of Plaintiff's employment with Defendant Acadia at CCTC, Mr. Muse was also a supervisor of Plaintiff.

13. Plaintiff was told by Jim Patton and other representatives of Defendant Acadia prior to his employment by it that Plaintiff would be practicing medicine as a Physician's Assistant through collaboration with Defendant Dr. McDaniel.

14. In order for Plaintiff to practice medicine through collaboration with Defendant Dr. McDaniel, several steps had to occur from a regulatory standpoint, including submission and approval of an application for licensure to the West Virginia Board of Osteopathic Medicine since Dr. McDaniel is an Osteopath.

15. Unless and until that application for licensure was approved, Defendant Acadia and CCTC were not legally permitted to bill insurers or patients for any medical services provided by

Plaintiff and Defendants were aware of that throughout Plaintiff's employment with Defendant Acadia at CCTC.

16. There was a portion of that application for licensure that required providing information pertaining to Plaintiff and another portion that required providing information pertaining to Dr. McDaniel and Defendant Acadia.

17. Plaintiff was directed by CCTC's Clinical Director Jim Patton to fill out the portion of the application for licensure that required information pertaining to Plaintiff and submit it to Mr. Patton so that Mr. Patton could add the information pertaining to Dr. McDaniel and then submit it to the West Virginia Board of Osteopathic Medicine for approval.

18. As directed by Mr. Patton, soon after starting his employment with Defendant Acadia at CCTC, Plaintiff fully filled out the portion of the application for licensure that required providing information pertaining to Plaintiff and provided it to Mr. Patton to add the additional required information pertaining to Dr. McDaniel and then submit the fully completed application for licensure to the West Virginia Board of Osteopathic Medicine for approval.

19. Plaintiff did not have the required information to be provided pertaining to Dr. McDaniel or Defendant Acadia/CCTC and, thus, could not have filled out the application completely or sent it to the West Virginia Board of Osteopathic Medicine for approval on his own without Defendant Acadia, Defendant Dr. McDaniel, and Jim Patton's assistance.

20. Plaintiff also was not authorized by Defendant Acadia, CCTC, Defendant Dr. McDaniel, Mr. Patton or anyone else at CCTC to fill out the section of the licensure application requiring information pertaining to Dr. McDaniel or Defendant Acadia or to send the licensure application to the West Virginia Board of Osteopathic Medicine.

21.     Plaintiff inquired of Jim Patton on several occasions, to the point of feeling that he was being a pest, whether Mr. Patton had submitted the fully completed application to the West Virginia Board of Osteopathic Medicine and Mr. Patton assured Plaintiff each time that he was working on it and it would be done as soon as possible.

22.     Plaintiff offered to help Mr. Patton in any way possible on multiple occasions to get the licensure application completed and submitted and Mr. Patton refused Plaintiff's offer of help.

23.     Plaintiff expressed his concern many times to Mr. Patton that Defendant Acadia was billing insurers and patients for medical services provided by Plaintiff without the West Virginia Board of Osteopathic Medicine having approved the application and that doing so would be illegal and fraudulent.

24.     Throughout Plaintiff's employment with Defendant Acadia at CCTC, Defendant McDaniel was verbally abusive to Plaintiff and harassed and threatened Plaintiff on many occasions and Plaintiff believed that Dr. McDaniel might be under the influence of alcohol or drugs in the workplace due to Dr. McDaniel's statements and conduct toward Plaintiff and others in the workplace at CCTC.

25.     Defendant McDaniel's conduct and statements toward Plaintiff and others in front of Plaintiff created a hostile, toxic work environment to which Plaintiff was subjected while employed at CCTC.

26.     Plaintiff complained to Jim Patton, as Clinical Director of CCTC on behalf of Defendant Acadia, multiple times about Dr. McDaniel's harassing, threatening and abusive statements and conduct toward Plaintiff and others and the uncomfortable, hostile work

environment Dr. McDaniel created and fostered and Mr. Patton had witnessed some of those statements and conduct.

27.     Plaintiff also reported Dr. McDaniel's abusive behavior in great detail to the Nursing and Therapist Supervisor Rebecca Boardman and to former Regional Director Ronda Kearns-Strrawser and Plaintiff expressed his concern that Dr. McDaniel would retaliate against him for making those reports.

28.     Former Regional Director Ronda Kearns-Strawser responded that she would talk to Dr. McDaniel about it, but Plaintiff never received word of whether that conversation occurred, what was discussed, or the outcome of it.  In any case, Dr. McDaniel's harassment, threats and abuse of Plaintiff did not stop after those reports were made and indeed got worse.

29.     To Plaintiff's knowledge, no one employed by Defendant Acadia did anything to investigate Plaintiff's complaints or to stop Dr. McDaniel from continuing to harass, threaten and abuse Plaintiff or perpetuating the hostile, toxic work environment to which Plaintiff was subjected while employed at CCTC.

30.     In late April 2021, when James Patton was separated from employment with Defendant Acadia and CCTC, Mr. Patton revealed to Plaintiff that he had never completed the remaining portion of the application for licensure to practice at CCTC and had never submitted it to the West Virginia Board of Osteopathic Medicine for approval.

31.     After James Patton's separation, Defendant Acadia named Defendant Jared Muse as acting Clinical Director of CCTC.

32.     When Defendant Jared Muse started as acting Clinical Director of CCTC in late April 2021, Plaintiff advised Mr. Muse that when Plaintiff started with Acadia six months prior, he was told that he would be practicing as a Physician's Assistant in collaboration with Dr.

McDaniel, that he had to be licensed to serve in that role by the West Virginia Board of Osteopathic Medicine, that he had filled out the portion of the application for licensure to be submitted to the West Virginia Board of Osteopathic Medicine with the required information pertaining to him and submitted it to the prior Clinical Director James Patton to add the required information pertaining to Dr. McDaniel and submit it for approval, that he had inquired of James Patton on several occasions (to the point of feeling uncomfortable that he was being a pest) whether he had done so and Mr. Patton said each time that he would complete it and submit it as soon as possible, and that James Patton told Plaintiff at the time of Mr. Patton's separation that he had not done so.

33.     Defendant Jared Muse responded by asking Plaintiff why James Patton had not filled out Defendant Acadia and Defendant McDaniel's portion of the licensure application clearly demonstrating that it was Mr. Patton and Defendants fault that the licensure application wasn't fully filled out or submitted for approval by the West Virginia Board of Osteopathic Medicine.

34.     When Defendant Jared Muse became the acting Clinical Director of CCTC in late April 2021, it became Defendant Muse's responsibility, in addition to it being the responsibility of James Patton and Defendants Dr. McDaniel and Acadia generally, to add the required information pertaining to Dr. McDaniel and Acadia to the licensure application partially filled out by Plaintiff and provided to then Clinical Director Jim Patton and to then submit it to the West Virginia Board of Osteopathic Medicine for approval.

35.     Upon information and belief, Defendant Muse, Defendant Dr. McDaniel, and Defendant Acadia never fulfilled that responsibility and did not add the required information pertaining to Dr. McDaniel to the licensure application or submit it to the West Virginia Board of Osteopathic Medicine.

36.     Given the fact that Plaintiff was not aware of the information pertaining to Dr. McDaniel required on the licensure application and was not authorized by Defendants Acadia, Dr. McDaniel and Muse or Jim Patton to add it on the application or to submit the application for approval, the failure to complete and submit the application cannot be imputed to Plaintiff, blamed on Plaintiff, or used as a basis for any adverse employment action against Plaintiff by Defendants.

37.     On Thursday, May 27, 2021, Plaintiff made a formal complaint to acting Clinical Director Jared Muse regarding the odd, harassing and abusive behavior of Defendant Dr. McDaniel toward Plaintiff earlier that day and also reported his concerns that Dr. McDaniel may have been intoxicated at work that day given his strange and inexplicable behavior toward Mr. Carter.

38.     Defendant Jared Muse was already aware of Dr. McDaniel's abusive behavior toward Plaintiff and others over the weeks since Mr. Muse began serving as acting Clinical Director of CCTC for Defendant Acadia, as was everyone else in the office at CCTC.

39.     Plaintiff expressed to Defendant Jared Muse while making his report that he was afraid that Dr. McDaniel would retaliate against Plaintiff for making the report and requested assurances from Mr. Muse that reprisal would not occur, but Mr. Muse did not respond other than to request that Plaintiff put together a written statement about Dr. McDaniel's behavior and then directed Plaintiff to leave work and not come back until Mr. Muse called him, which Plaintiff assumed was so that Mr. Muse could conduct an investigation of the report and complaint.

40.     Upon information and belief, Defendant Muse and Defendant Acadia did not investigate Plaintiff's report of harassment, threats and abuse of Plaintiff by Defendant Dr. McDaniel and the hostile, toxic work environment he created and did not take measures to stop Defendant Dr. McDaniel's unlawful conduct.

41.     Upon information and belief, Defendant Muse and Defendant Acadia did not investigate Plaintiff's reported concerns that Defendant Acadia was unlawfully and fraudulently billing insurers and patients for medical services provided by Plaintiff.

42.     On or about May 28, 2021, Plaintiff was told by Defendant Jared Muse that "his position" was being placed on suspension without pay for the week of May 31-June 4 despite the fact that Plaintiff's written employment contract does not contain a provision permitting Plaintiff to be suspended with or without pay with or without cause. Plaintiff had many questions for Defendant Jared Muse, including but not limited to the reason and basis for the suspension, why it was without pay, and what authority Defendant Acadia and Defendant Muse had for placing his position on suspension, and what Mr. Muse was doing about the Plaintiff's report of harassment and hostile work environment the prior day and attempted to ask them, but Mr. Muse refused to discuss anything further.

43.     Defendants Muse, McDaniel and Acadia's suspension of Plaintiff and their failure and refusal to pay Plaintiff while on "suspension" was unlawful and in retaliation for Plaintiff's reports of harassment, threats and abuse of Plaintiff and the hostile, toxic work environment created by Defendant McDaniel and his reports of his concerns that Defendant Acadia was unlawfully and fraudulently billing insurers and patients for medical services provided by Plaintiff.

44.     On Sunday, June 6, 2021, Plaintiff emailed Mr. Muse to advise him that he was uncomfortable providing a written statement due to concerns of Dr. McDaniel retaliating against him in the hopes that Mr. Muse would finally provide some reassurances that retaliation would not be tolerated by Acadia, and Plaintiff said that he would be glad to provide a written statement after Mr. Muse provided assurance that there would be no reprisal, but those assurances again did not come.

9

45.     On Monday, June 7, 2021, Plaintiff was told by Defendant Muse to be ready for a phone call on June 8, 2021 at 9:30 a.m., which Plaintiff assumed would be to discuss Dr. McDaniel's behavior.

46.     During that phone call, Mr. Muse did not discuss Dr. McDaniel's behavior at all and instead asked Plaintiff why he had not yet obtained his medical license from the West Virginia Board of Osteopathic Medicine to practice in collaboration with Dr. McDaniel at Acadia. Plaintiff reminded Mr. Muse that Plaintiff could only fill out the first part of the licensure application and had done so and submitted it to Mr. Patton many months prior to complete the remaining section to be completed with Dr. McDaniel's and Acadia's information and then submit it to the West Virginia Board of Osteopathic Medicine, that he had inquired many times of Mr. Patton whether he had completed the second section and submitted it for approval and Mr. Patton told him each time that he was working on it and it would be completed as soon as possible, and that he only found out when Mr. Paxton was separated from employment in late April 2021 that Mr. Patton had not done so, and that after Mr. Muse became the acting Clinical Director it became his responsibility to complete the second section of the licensure application and submit it to the West Virginia Board of Osteopathic Medicine for approval.

47.     Ultimately, Mr. Muse did not discuss Dr. McDaniel's behavior at all during the phone call, at the end of which he directed Plaintiff to remain off work for the rest of the week, again assumedly so that he could conduct an examination of Dr. McDaniel's behavior and Plaintiff's reported complaints.

48.     Plaintiff remained off work for the week of June 7-11, 2021, as he was directed by Defendant Muse.

49.     On Monday, June 14, 2021, Plaintiff received a call from Defendant Muse directing Plaintiff to come to the CCTC office on June 15, 2021 at 8:00 a.m. for a meeting, which Plaintiff assumed would be about Dr. McDaniel's conduct and the results of Mr. Muse's investigation.

50.     Plaintiff attended that meeting as directed, whereupon Plaintiff was told by Defendant Muse that he was being terminated from employment with Defendant Acadia due to not having a medical license from the West Virginia Board of Osteopathic Medicine to practice at CCTC.

51.     Given that Plaintiff completed his portion of the licensure application and submitted it to Mr. Patton and that Mr. Patton and Defendants Acadia, Dr. McDaniel and Muse failed to fill out the remaining portion and submit it to the West Virginia Board of Osteopathic Medicine, the lack of licensure was clearly pretext and not the real reason for Plaintiff's termination.

52.     Plaintiff's termination was, in fact, in retaliation for Plaintiff's repeated reports of the harassment, threats, and abuse of Plaintiff by Defendant Dr. McDaniel and the hostile, toxic work environment Defendant Dr. McDaniel created and fostered throughout Plaintiff's employment with Defendant Acadia at CCTC and Plaintiff's reports of his concern that Defendant Acadia might be illegally and fraudulently billing insurers and patients for medical services provided by Plaintiff. As such, Plaintiff's termination was an unlawful, retaliatory discharge.

53.     Plaintiff's termination was also based, in part, on the Plaintiff's age, 58 at the time of his termination.

54.     Plaintiff was not paid by Defendants the salary due to him under the written employment contract from May 31, 2021 until the day of June 15, 2021, when he was verbally advised he was being terminated.

11

55. Plaintiff did not ever receive written notice of termination of his employment contract as required by its express terms.

56. In fact, Plaintiff was not sent anything in writing regarding his separation from employment with Defendant Acadia or the status of his employment benefits, which included health, dental, vision, disability, and life insurance along with his 401k retirement plan.

57. Given all of the above facts, Plaintiff was not properly terminated for cause for any of the specifically enumerated reasons set forth in the written employment contract.

58. Since Plaintiff was not provided written notice of his termination and was not properly terminated for cause as set forth in the written employment contract, Plaintiff's employment contract was automatically renewed when its original one year term ended on or about September 28, 2021, and it remains in effect today such that Defendant Acadia owes Plaintiff the full amount of pay provided for under the contract through today.

59. Plaintiff has not been paid the salary due to him under the written employment contract from June 15, 2021, to today.

## COUNT I: HARASSMENT, HOSTILE WORK ENVIRONMENT, AND WRONGFUL RETALIATORY DISCHARGE – WV HUMAN RIGHTS ACT

60. Plaintiff hereby incorporates by reference the allegations contained hereinabove in each and every paragraph as if set forth fully herein verbatim.

61. Throughout Plaintiff's employment with Defendant Acadia from the beginning on September 28, 2020, Defendant McDaniel harassed, threatened and verbally abused Plaintiff and created a hostile, toxic work environment in violation of the West Virginia Human Rights Act, West Virginia Code 5-11-1 et seq. and based upon Plaintiff being a member of a protected class with regard to his age being over 40.

62. Plaintiff reported Dr. McDaniel's harassment, threats and verbal abuse to various employees and representatives of Defendant Acadia, including but not limited to James Patton, Rebecca Boardman, Ronda Kearns-Strawser, and Defendant Jerad Muse, and the entire office had witnessed it occur.

63. Defendants and all of the aforementioned employees failed to do anything to investigate Plaintiff's reported complaints about Dr. McDaniels and allowed it to continue.

64. Defendant Muse furthered the hostile work environment created by Defendant McDaniel by failing to investigate or respond to Plaintiff's reported complaints against Dr. McDaniel, allowing it to perpetuate further and providing Plaintiff no avenue of relief.

65. Plaintiff was then retaliated against by all Defendants after making his reported complaints in violation of the West Virginia Human Rights Act, West Virginia Code 5-11-1 et seq. by being suspended without pay without any legal basis, then discharged, then not paid what he was owed in wages for work up to June 15, 2021 or those due to him thereafter.

66. Defendant Acadia is an employer within the definition set forth in the West Virginia Human Rights Act, W.Va. Code 5-11-1 et seq. by virtue of employing more than 12 persons within the State of West Virginia.

67. Defendants' and all of the aforementioned employees' acts were within the scope of their employment with Defendant Acadia.

68. As a direct and proximate result of Defendants' conduct as alleged herein and violation of Plaintiff's rights under the West Virginia Human Rights Act, Plaintiff has suffered severe and significant damages, including but not limited to, lost wages past and future, lost earning potential, emotional damage, mental anguish, embarrassment, humiliation, and psychological damage.

69. Defendants' actions were willful, wanton, malicious, and undertaken with a conscious, reckless and outrageous disregard and indifference to the rights of Plaintiff and his health, safety and welfare and violated the West Virginia Human Rights Act and, as such, Defendants are liable to Plaintiff for punitive damages.

## COUNT II: WHISTLEBLOWER LIABILITY

70. Plaintiff hereby incorporates by reference the allegations contained hereinabove in each and every paragraph as if set forth fully herein verbatim.

71. As described above, Plaintiff's actions constitute a good faith report of "wrongdoing" as that term is defined by the West Virginia Whistle-Blower Law.

72. The Defendants' actions, including but not limited to their suspension of Plaintiff without pay, termination of Plaintiff's employment, and failure to pay him wages earned during his employment with Defendant Acadia, constitute illegal discriminatory and/or retaliatory acts against a whistle-blower within the meaning of the Whistle-Blower Law, W.Va. Code 6C-1-1 et seq.

73. Defendants' and all of the aforementioned employees' acts were within the scope of their employment with Defendant Acadia for which Defendant Acadia is vicariously liable.

74. As a direct and proximate result of Defendants' conduct as alleged herein and violation of Plaintiff's rights under the Whistle-Blower Law, Plaintiff has suffered severe and significant damages, including but not limited to, lost wages past and future, lost earning potential, emotional damage, mental anguish, embarrassment, humiliation, and psychological damage.

75. Defendants' actions were willful, wanton, malicious, and undertaken with a conscious, reckless and outrageous disregard and indifference to the rights of Plaintiff and his

health, safety and welfare and in violation of the Whistle-Blower Law and, as such, Defendants are liable to Plaintiff for punitive damages.

76.     The actions of Defendants entitle the Plaintiff to an award of attorney fees and costs.

### COUNT III:  VIOLATION OF PUBLIC POLICY/HARLESS CLAIM

77.     Plaintiff repeats and incorporates by reference the allegations contained hereinabove in each and every paragraph as if set forth fully herein verbatim.

78.     Defendants' actions constitute an unlawful discharge in contravention of a substantial public policy of the State of West Virginia, as described in Harless v. First Nat. Bank in Fairmont, 162 W.Va. 116, 246 S.E.2d 270 (1978).  In discharging Plaintiff, Defendants were motivated by a desire to retaliate against Plaintiff for making reports of harassment, threats and verbal abuse by Defendant Dr. McDaniel and the hostile, toxic work environment he created, and his reports of concern that Defendant Acadia was fraudulently and illegally billing insurers and patients for medical services provided by Plaintiff.

79.     It is a violation of a substantial public policy of the State of West Virginia for an employer and an employee's supervisors to retaliate against him for reporting misconduct by harassing him, terminating his employment, and failing to pay him the wages and benefits due to him and Defendants did so to Plaintiff.

80.     Defendants' and all of the aforementioned Acadia employees' acts were within the scope of their employment with Defendant Acadia.

81.     As a direct and proximate result of Defendants' conduct as alleged herein, Plaintiff has suffered severe and significant damages, including but not limited to, lost wages past and future, lost earning potential, emotional damage, mental anguish, embarrassment, humiliation, and psychological damage.

82.     Defendants' actions were willful, wanton, malicious, and undertaken with a conscious, reckless and outrageous disregard and indifference to the rights of Plaintiff and his health, safety and welfare and violated the West Virginia Human Rights Act and, as such, Defendants are liable to Plaintiff for punitive damages.

83.     Defendants' conduct is so reprehensible that punitive damages should be assessed by a jury to punish Defendants and to deter and prevent similar conduct in the future.

## COUNT IV:   WAGE PAYMENT AND COLLECTION ACT VIOLATION

84.     Plaintiff repeats and incorporates by reference the allegations contained hereinabove in each and every paragraph as if set forth fully herein verbatim.

85.     Defendant Acadia was Plaintiff's employer and Defendants McDaniel and Muse were supervisors of Plaintiff at the time of his suspension and separation from employment.

86.     Defendants violated the West Virginia Wage Payment and Collection Act, West Virginia Code 21-5-1 et seq. by failing to pay Plaintiff all wages and benefits earned for his work prior to termination either timely and/or at all.

87.     Due to Defendants' violation of the West Virginia Wage Payment and Collection Act, Plaintiff is entitled to the unpaid wages and benefits he earned prior to termination, statutory damages of twice that amount, and attorney's fees and costs incurred in connection with this claim.

88.     Defendants' violation of the West Virginia Wage Payment and Collection Act in failing to pay and timely pay him for wages and benefits earned by him prior to termination was willful, wanton, and malicious and undertaken with a conscious, reckless and outrageous disregard and indifference to the rights of Plaintiff and his health, safety and welfare, and, as such, they are liable to him for punitive damages in connection therewith.

## COUNT V:   VIOLATION OF STATUTES

90.    Plaintiff repeats and incorporates by reference the allegations contained hereinabove in each and every paragraph as if set forth fully herein verbatim.

91.    West Virginia Code 55-7-9, entitled "Violation of Statutes" provides:

Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages.

92.    Plaintiff is a "person injured by Defendants' violation of … statute" as set forth in West Virginia Code 55-7-9.

93.    Defendants' actions were in violation of the West Virginia Human Rights Act, West Virginia Whistle-Blower Law, and the West Virginia Wage Payment and Collection Act. Thus, Defendants are liable to Plaintiff under West Virginia Code 55-7-9.

94.    Defendants' and all of the aforementioned Acadia employees' acts were within the scope of their employment with Defendant Acadia.

95.    As a direct and proximate result of Defendants' conduct as alleged herein, Plaintiff has suffered severe and significant damages, including but not limited to, lost wages past and future, lost earning potential, emotional damage, mental anguish, embarrassment, humiliation, and psychological damage.

96.    Defendants' actions were willful, wanton, malicious, and undertaken with a conscious, reckless and outrageous disregard and indifference to the rights of Plaintiff and his health, safety and welfare and violated the West Virginia Human Rights Act and, as such, Defendants are liable to Plaintiff for punitive damages.

97.    Defendants' conduct is so reprehensible that punitive damages should be assessed by a jury to punish Defendants and to deter and prevent similar conduct in the future.

## COUNT VI: BREACH OF CONTRACT

98.     Plaintiff repeats and incorporates by reference the allegations contained hereinabove in each and every paragraph as if set forth fully herein verbatim.

99.     Defendants have violated the written employment contract they entered into with Plaintiff by suspending him without pay without any right or basis for doing so, by discharging him without proper written notice and without any right or basis for doing so, and by failing to pay him the wages due to him under the contract.

100.    As a direct and proximate result of Defendants' conduct as alleged herein, Plaintiff has suffered severe and significant damages, including but not limited to, lost wages past and future, lost earning potential, emotional damage, mental anguish, embarrassment, humiliation, and psychological damage.

101.    Defendants' actions were willful, wanton, malicious, and undertaken with a conscious, reckless and outrageous disregard and indifference to the rights of Plaintiff and his health, safety and welfare and, as such, Defendants are liable to Plaintiff for punitive damages.

102.    Defendants' conduct is so reprehensible that punitive damages should be assessed by a jury to punish Defendants and to deter and prevent similar conduct in the future.

## COUNT VII – UNJUST ENRICHMENT/CONVERSION

103.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein verbatim.

104.    By failing to make payment to Plaintiff at the time it was due in direct contravention of Plaintiff's wishes and rights, Defendants have made use of Plaintiff's property and monies due to him.

105.    By failing to make payment when, as and how owed to Plaintiff, Defendants have converted property which belonged to Plaintiff to their own use.

106.    By failing to make payment when, as and how owed to Plaintiff, Defendants have unjustly enriched themselves.

107.    As a direct and proximate result of Defendants' conduct, Plaintiff has incurred economic and non-economic damages and will continue to suffer economic and non-economic damages in the future.

108.    Defendants' actions were willful, wanton, reckless and intentional and demonstrate gross indifference to the rights of Plaintiff.

109.    Defendants' conduct is so reprehensible that punitive damages should be assessed by a jury to punish Defendants and to deter and prevent similar conduct in the future.

## COUNT VIII – FRAUD/CONSTRUCTIVE FRAUD

110.    Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein verbatim.

111.    By failing to make payment to Plaintiff when, as and how he was entitled to be paid, Defendants have committed and/or constructive fraud.

112.    Defendants knew and should have known that pursuant to the terms of his employment contract, Plaintiff was entitled to be paid wages and benefits that they failed and refused to pay him.

113.    Defendants committed fraud and/or constructive fraud by paying Plaintiff less than he was entitled to for wages and benefits due to him under his employment contract, thereby representing that he was not in fact owed those wages and benefits and by falsely stating to him that he was being discharged due to the failure to obtain approval from the Board of Osteopathic Medicine for him to function as and be billed out as a Physician's Assistant when the failure to obtain such approval was entirely the fault of the Defendants and not Plaintiff.

19

114. As a direct and proximate result of Defendants' conduct, Plaintiff has incurred economic and non-economic damages and will continue to suffer economic and non-economic damages in the future.

115. Defendants' actions were willful, wanton, reckless and intentional and demonstrate gross indifference to the rights of Plaintiff.

116. Defendants' conduct is so reprehensible that punitive damages should be assessed by a jury to punish Defendants and to deter and prevent similar conduct in the future.

## COUNT IX – TORT OF OUTRAGE

117. Plaintiff hereby incorporates by reference all preceding paragraphs of the Complaint as if fully set forth herein verbatim.

118. Defendants' conduct as alleged herein above is so outrageous and extreme that no reasonable member of the community in Plaintiff's position could or should be expected to tolerate it.

119. As a direct and proximate result of Defendants' conduct, Plaintiff has incurred economic and non-economic damages and will continue to suffer economic and non-economic damages in the future.

120. Defendants' actions were willful, wanton, reckless and intentional and demonstrate gross indifference to the rights of Plaintiff.

121. Defendants' conduct is so reprehensible that punitive damages should be assessed by a jury to punish Defendants and to deter and prevent similar conduct in the future.

**WHEREFORE**, Plaintiff prays that this Court hear this case and upon so doing award the following damages:

(1) all actual wages and benefits due to him that have been unpaid to date;

(2) liquidated damages in an amount twice all wages and benefits unpaid to date or paid untimely;

(3) back pay, front pay and all other economic damages available;

(4) general damages for mental anguish, emotional distress, humiliation, embarrassment, annoyance and inconvenience;

(5) punitive and exemplary damages;

(6) attorneys fees, costs, and expenses;

(7) prejudgment and post-judgment interest; and

(7) all other relief which is deemed fair and just by this Court.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

CHRISTOPHER CARTER,
By Counsel,

David J. Mincer (WV Bar #7486)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia  25337-3710
T:  (304) 345-4222
F:  (304) 343-3133

# AMENDED SUMMONS

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

CHRISTOPHER CARTER,

    Plaintiff,

v.

                                  Civil Action No. 23-C-506
                                  Honorable Akers

ACADIA HEALTHCARE COMPANY,
INC. d/b/a CHARLESTON
COMPREHESIVE TREATMENT
CENTER, a foreign corporation; MARK
ELLIOT MCDANIEL, D.O.; and JARED
MUSE,

    Defendants.

To the above-named Defendant:

                Jared Muse
                13884 Passmore Ct.
                Jacksonville, Florida 32226

    IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon, whose address is BAILEY & WYANT, P.L.L.C., P.O. Box 3710, Charleston, West Virginia 25337-3710, an answer, including any related counterclaim you may have to the Complaint filed against you in the above-styled action, a true copy of which is herewith delivered to you. You are required to serve your answer within twenty (20) days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled action.

    Dated: 6/13/23

                                    **Cathy S. Gatson, Clerk**
                                Clerk of Court by S. Withrow

Rcpt #601444
Re-Issued Summon
Sent CM
6-13-23 sw

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

RESTRICTED DELIVERY

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)          $ _____
☐ Return Receipt (electronic)        $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required           $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

Postage
$

RETURN RECEIPT REQUESTED

Total Postage and Fees
$

Sent To _Jared Muse_____
Street and Apt. No., or PO Box No. _13864 Passmore Ct.___
City, State, ZIP+4® _Jacksonville, FL 32226_

7021 0950 0001 0388 9777

PS Form 3800, April 2015 PSN 7530-02-000-9047     See Reverse for Instructions

# SUMMONS

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

CHRISTOPHER CARTER,

    Plaintiff,

v.

                                      Civil Action No. 23-C-506
                                      Honorable Akers

ACADIA HEALTHCARE COMPANY,
INC. d/b/a CHARLESTON
COMPREHESIVE TREATMENT
CENTER, a foreign corporation; MARK
ELLIOT MCDANIEL, D.O.; and JARED
MUSE,

    Defendants.

To the above-named Defendant:

                      Acadia Healthcare Company, Inc.
                      d/b/a Charleston Comprehensive Treatment Center
                      Attention:  Christopher L. Howard
                      6100 Tower Circle, Suite 1000
                      Franklin, Tennessee 37067

      **IN THE NAME OF THE STATE OF WEST VIRGINIA**, you are hereby summoned and required to serve upon, whose address is BAILEY & WYANT, P.L.L.C., P.O. Box 3710, Charleston, West Virginia 25337-3710, an answer, including any related counterclaim you may have to the Complaint filed against you in the above-styled action, a true copy of which is herewith delivered to you.  You are required to serve your answer within twenty (20) days after service of this Summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled action.

      Dated: June 14, 2023

                                      **Cathy S. Gatson, Clerk**

                                        Clerk of Court by S. Withrow

Rcpt # 601444
Re- Summons Issued
Sent to SOS w/
Check #67526

# AMENDED SUMMONS

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

*FILED*
*2023 JUN 21 AM 10: 55*
*CATHY S. GATSON, CLERK*
*KANAWHA COUNTY CIRCUIT COURT*

CHRISTOPHER CARTER,

 Plaintiff,

v.

Civil Action No. 23-C-506
Honorable Akers

ACADIA HEALTHCARE COMPANY,
INC. d/b/a CHARLESTON
COMPREHESIVE TREATMENT
CENTER, a foreign corporation; MARK
ELLIOT MCDANIEL, D.O.; and JARED
MUSE,

 Defendants.

To the above-named Defendant:

> Mark Elliot McDaniel, D.O.
> 192 us Route 60
> Culloden, West Virginia 25510

 **IN THE NAME OF THE STATE OF WEST VIRGINIA**, you are hereby summoned and required to serve upon, whose address is BAILEY & WYANT, P.L.L.C., P.O. Box 3710, Charleston, West Virginia 25337-3710, an answer, including any related counterclaim you may have to the Complaint filed against you in the above-styled action, a true copy of which is herewith delivered to you. You are required to serve your answer within twenty (20) days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled action.

 Dated: 6-21-23

**Cathy S. Gatson, Clerk**

Clerk of Court

By CPugh

re-issued sums
return to Atty

FILED

CR

2023 JUN 22 AM 8:14

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

23-C-506

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☑ Agent ☐ Addressee<br>B. Received by (Printed Name)  C. Date of Delivery<br>6/1 |
| 1. Article Addressed to:<br>Jared Muse<br>13884 Passmore Ct.<br>Jacksonville, FL 32226 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>RESTRICTED DELIVERY |
| 9590 9402 6702 1060 8260 68 | 3. Service Type<br>☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☑ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ ... Restricted Delivery | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |
| 2. Article Number (Transfer from service label)<br>7021 0950 0001 0388 9777 | |

PS Form 3811, July 2020 PSN 7530-02-000-9053    23-C-506 SW    Domestic Return Receipt

[2]

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305





Mac Warner
Secretary of State
State of West Virginia
Phone: 304-558-6000
886-767-8683
Visit us online:
www.wvsos.com

KANAWHA COUNTY CIRCUIT COURT
Kanawha County Courthouse
111 Court Street
Charleston, WV 25301-2500

| | |
|---|---|
| **Control Number:** 310218 | **Agent:** CHRISTOPHER HOWARD |
| **Defendant:** ACADIA HEALTHCARE COMPANY, INC.<br>6100 TOWER CIRCLE<br>SUITE 1000<br>FRANKLIN, TN 37067 US | **County:** Kanawha |
| | **Civil Action:** 23-C-506 |
| | **Certified Number:** 92148901125134100003813921 |
| | **Service Date:** 6/16/2023 |

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in the name and on behalf of your corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in the name and on behalf of your corporation as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office.***

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

FILED

2023 JUN 26  PM 3: 32

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

# SUMMONS

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**CHRISTOPHER CARTER,**

    **Plaintiff,**

**v.**

**ACADIA HEALTHCARE COMPANY,
INC. d/b/a CHARLESTON
COMPREHESIVE TREATMENT
CENTER, a foreign corporation; MARK
ELLIOT MCDANIEL, D.O.; and JARED
MUSE,**

    **Defendants.**

Civil Action No. **23-C-506**

Honorable **Akers**



**To the above-named Defendant:**

        **Acadia Healthcare Company, Inc.
d/b/a Charleston Comprehensive Treatment Center
Attention: Christopher L. Howard
6100 Tower Circle, Suite 1000
Franklin, Tennessee 37067**

     **IN THE NAME OF THE STATE OF WEST VIRGINIA,** you are hereby summoned
and required to serve upon, whose address is **BAILEY & WYANT, P.L.L.C.,** P.O. Box 3710,
**Charleston, West Virginia 25337-3710,** an answer, including any related counterclaim you may
have to the Complaint filed against you in the above-styled action, a true copy of which is herewith
delivered to you.  You are required to serve your answer within twenty (20) days after service of
this Summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default
will be taken against you for the relief demanded in the Complaint and you will be thereafter barred
from asserting in another action any claim you may have which must be asserted by counterclaim
in the above-styled action.

Dated: **June 14, 2023**

                           **Cathy S. Gatson, Clerk**

                           Clerk of Court **by S. Withrow**